ANDREW T. SOLOMON (admitted *pro hac vice*)
JENNIFER G. CRAMER
asolomon@solomoncramer.com; jcramer@solomoncramer.com
SOLOMON & CRAMER LLP
1441 BROADWAY, SUITE 6026
NEW YORK, NY 10018
Telephone: (212) 884-9102; Facsimile: (516) 368-3896
Special Litigation Counsel to the Official Committee of Equity Security Holders

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY**

| | |
|---|---|
| In re:<br><br>ICPW LIQUIDATION CORPORATION, a California corporation,[1]<br><br>    Debtor and Debtor in Possession.<br>In re:<br><br>ICPW LIQUIDATION CORPORATION, a Nevada corporation,[2]<br><br>    Debtor and Debtor in Possession.<br>Affects:<br><br>☒  Both Debtors<br><br>☐  ICPW Liquidation Corporation, a California corporation<br><br>☐  ICPW Liquidation Corporation, a Nevada corporation.<br><br>OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS of ICPW LIQUIDATION CORPORATION, a Nevada corporation,<br><br>        Objector and Plaintiff,<br>  - against -<br><br>JEFFREY CORDES and WILLIAM AISENBERG,<br><br>        Claimants and Defendants. | Lead Case No.:  1:17-bk-12408-MB<br>Jointly administered with Case No.: 1:17-bk-12409-MB; Chapter 11 Cases<br><br>Adv. Proc. No.: 1:18-ap-01011<br><br>**SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY THE PROCEEDINGS**<br><br>DATE:    July 16, 2018<br>TIME:    1:30 p.m.<br>PLACE:   Courtroom "303"<br>         21041 Burbank Boulevard<br>         Woodland Hills, California<br>         91367 |

---

[1] Formerly known as Ironclad Performance Wear Corporation, a California corporation.
[2] Formerly known as Ironclad Performance Wear Corporation, a Nevada corporation.

- 1 -

Matthew A. Pliskin, Trustee (the "Trustee"), under the Trust created pursuant to the *Debtors and Official Committee of Equity Security Holders Joint Plan of Liquidation, dated February 9, 2018* (the "Plan"), and that certain trust agreement dated as of February 28, 2018 (the "Trust Agreement"), entered into by and among Debtor, ICPW Liquidation Corporation, a California corporation, formerly known as Ironclad Performance Wear Corporation, a California corporation, Debtor, ICPW Liquidation Corporation, a Nevada corporation, formerly known as Ironclad Performance Wear Corporation, a Nevada corporation (collectively the "Debtors" or "ICPW"), the Trust Board established under the Plan and the Trust Agreement, the Trustee, and ICPW Nevada Trust (the "Trust"), submits the attached brief in accordance with the Court's instructions and in further support of the Trust's motion (the "Motion") to this Court for an order: (i) compelling arbitration of all claims and counterclaims involving Defendants Jeffrey Cordes and William Aisenberg (collectively, "Defendants" or "Former Officers") pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*; and (ii) staying the adversary proceeding against the Former Officers and any actions related to the Former Officers in the above-referenced chapter 11 cases, if any, pending the outcome of arbitration pursuant to 9 U.S.C. § 3.

## **Sonic Automotive**

At the hearing on the Motion on June 12, 2018, counsel for the Former Officers repeatedly cited to a "*Sonicblue*" case in support of its arguments that the Motion should be denied, which case had not been cited in their objection (the "Objection") to the Motion. As a consequence, the Court invited the Trustee to submit up to a five-page brief regarding the case. After the hearing, counsel for the Former Officers informed counsel for the Trustee that the case was not "*Sonicblue*" but *Sonic Automotive, Inc. v. Younis*, 2015 WL 12656915 (C.D. Cal. Oct. 19, 2015). The Former Officers had not cited the case in their Objection to the motion to compel [AP Doc. 36], filed on May 29, 2018, but did cite it in a footnote to their June 5, 2018 Reply on the Motion

- 2 -

to Terminate the Stay in this Adversary Proceeding in order to begin discovery [AP Doc. 38 p. 3., note 4].

Why the Former Officers featured *Sonic Automotive* at argument is something of a mystery. It is utterly unhelpful to their position. Indeed, the Trust would be hard pressed to find a more supportive case for its position of *no* waiver.

*Sonic Automotive* is attached as Exhibit A. It requires no extended discussion. The case found no waiver of arbitral rights. It did so under California's six-factor waiver test, which like its federal counterpart, requires, *inter alia,* "inconsistent acts" and "prejudice." 2015 WL 12656915 at *4; *Compare Fisher v. A.G. Becker Paribas Incorporation*, 791 F.2d 691, 694 (9th Cir. 1986) (applying FAA; to carry heavy burden of showing a waiver, three elements must be satisfied: "(1) knowledge [by the waiving party] of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.").

### **No Inconsistent Acts**

The first issue in *Sonic Automotive* was whether the plaintiff, who was seeking to compel arbitration seven months after starting the lawsuit in court, had engaged in activities in the litigation that were inconsistent with the right to arbitrate (2015 WL 12656915 at *4). During that time, the plaintiff "opposed Defendant's motion for judgment on the pleadings, filed a first amended complaint, and participated in both a Rule 26(f) conference and a scheduling conference." This type of litigation activity (far more than the Trust's here) was not enough to support a finding that plaintiff "substantially invoked litigation machinery" (*id.* at *5). Thus, the Court held that the plaintiff had not engaged in inconsistent acts that would justify a waiver.

### **No Prejudice**

On "prejudice," California's standard is similar to the federal standard: prejudice can be found "where the petitioning party's conduct has substantially undermined … or substantially

- 3 -

Case 1:18-ap-01011-MB    Doc 42    Filed 06/21/18    Entered 06/21/18 15:22:00    Desc
Main Document    Page 4 of 13

impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." *Id.* at \*6 (quoting *Law Offices of Dixon R. Howell v. Valley,* 29 Cal. Rptr. 3d 499, 515 (Ct. App. 2005). The Court then discussed the "three recurring categories of conduct that demonstrate prejudice". *Id.* These are:

> [i] where a party unreasonably delays, [ii] where a party exploits trial court discovery procedures to gain an advantage, and [iii] where a party's delay results in lost evidence.

*Id.* (citing *Franco v. Arakelian Enters., Inc.*, 184 Cal. Rptr. 3d 501, 510 (Ct. App. 2015).

An interest in having a "confidential" arbitration procedure does not fall into any of the categories discussed in *Sonic Automotive*. Moreover, while litigation here may have publicized certain details about the Former Officers' misconduct, many of those details were already publicized in SEC filings. Others would have or could have been disclosed in response to the Former Officers' filing of proofs of claims. In any event, the Former Officers have no legal right to gag the Debtor or the Trustee. Confidentiality is only required within the confines of the arbitration proceeding; that right continues to exist unimpaired.

*Sonic Automotive* also addressed the argument that the "revelation of litigation strategy" is prejudice. The court found that the argument could not be credited because the defendant failed to "articulate how he will be prejudiced as a result of the litigation strategy he chose." The same defect exists here. Counsel claimed that the Former Officer's revealed their "litigation strategies" in their motion to dismiss, but never identified the particular strategy nor explained how its revelation would impair the argument from being recycled in arbitration. To be sure, the fact that procedure and remedies might be different in court and arbitration is not "prejudice"; those differences are the very reason a litigant prefers one forum over the other. If exercising that preference were a factor in determining "prejudice," then "prejudice" would exist in every case.

As explained in *Sonic Automotive,* prejudice attaches in cases of extreme delay or when a litigant capitalizes on and receives an advantage in one forum (e.g. like broad discovery in court) that would not be available in the other. No such prejudice was shown in *Sonic Automotive,* and no such prejudice has been shown here.

Based upon all of the foregoing, *Sonic Automotive* demonstrates that the Former Officer's waiver defense to arbitration holds no water.

Dated: June 21, 2018         SOLOMON & CRAMER LLP
                             By: */s/Andrew T. Solomon*
                                 Andrew T. Solomon
                                 Attorneys for ICPW Nevada Trust

EXHIBIT A - SONIC AUTOMOTIVE

2015 WL 12656915
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

SONIC AUTOMOTIVE, INC.
v.

Mohammed YOUNIS
CV 15-00717-RGK (AGRx)
|
Filed 10/19/2015

**Attorneys and Law Firms**

John Phillip Boggs, David J. Reese, Ian G. Robertson, Fine Boggs and Perkins LLP, Long Beach, CA, for Sonic Automotive, Inc.

Shaun J. Voigt, John E. Lattin, IV, Fisher & Phillips LLP, Irvine, CA, for Mohammed Younis.

**Proceedings: (IN CHAMBERS) Order Re: Plaintiff's Motion to Compel Arbitration (DE 27)**

R. GARY KLAUSNER, U.S. DISTRICT JUDGE

**I. INTRODUCTION**
**\*1** On February 2, 2015, Sonic Automotive, Inc. ("Plaintiff") filed a Complaint against Mohammed Younis ("Defendant") alleging: (1) Breach of Contract, (2) Violation of Uniform Trade Secrets Act, (3) Unfair Competition, and (4) Violation of Computer Fraud and Abuse Act. Defendant filed an Answer on March 19, 2015.

On May 6, 2015, this Court ruled on Defendant's Motion for Judgment on the Pleadings, dismissing Plaintiff's Unfair Competition claim with leave to amend and dismissing Plaintiff's Violation of Computer Fraud and Abuse claim without leave to amend. On May 19, 2015, Plaintiff filed a First Amended Complaint ("FAC").

On September 11, 2015, Plaintiff filed a Motion to Compel Arbitration, which is presently before the Court. For the following reasons, the Court **GRANTS** Plaintiff's motion.

**II. FACTUAL BACKGROUND**
Between April 2012 and December 2014, Defendant was employed as a Dealer Operator at BMW of Monrovia, an automobile dealership owned by Plaintiff. On February 5, 2014, Defendant signed a Dealer Operator Compensation Program in connection with his employment at BMW of Monrovia (the "Employment Agreement"). The Agreement contains restrictive covenants related to solicitation of employees, maintenance of confidential information, and use of confidential information.

Sometime thereafter, BMW of Las Vegas, which is owned by AutoNation, a competitor of Plaintiff's, offered employment to Defendant to serve as its General Manager. Plaintiff discovered that during Defendant's last six weeks of employment, after being offered employment by AutoNation, Defendant had improperly accessed Plaintiff's computer systems and transmitted confidential information in violation of the Agreement. After Defendant joined BMW of Las Vegas, he began soliciting management officials from BMW of Monrovia, successfully hiring a used car manager.

### III. JUDICIAL STANDARD

Under the Federal Arbitration Act ("FAA"), courts are required "to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement (assuming that the 'making of the arbitration agreement or the failure ... to perform the same' is not at issue)." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) (quoting 9 U.S.C. § 4). The role of the court is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Once an arbitration agreement is found to be valid, enforceable, and applicable, the court shall stay the action pending the outcome of the arbitration or dismiss the action. 9 U.S.C. § 3; *Sparling v. Hoffman Constr. Co. Inc.*, 864 F.2d 635, 638 (9th Cir. 1988).

### IV. DISCUSSION

#### A. Validity and Scope of the Arbitration Provision

In ruling on a motion to compel arbitration, the role of the court is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130.

##### 1. *Validity of the Arbitration Provision*

**\*2** "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "The party seeking to compel arbitration has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

Here, neither Plaintiff nor Defendant disputes that a valid Employment Agreement was executed between them on February 5, 2014. The arbitration provision within the Employment Agreement states,

> I and the Company both agree that any claim, dispute, and/or controversy that either party may have against one another ... arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based in tort, contract, statutory, or equitable law, or otherwise ... shall be submitted to and determined exclusively by binding arbitration.... I agree that the arbitration and this Agreement shall be controlled by the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act.

(Mot. To Compel Arbitration, Natividad Decl., Ex. A). Plaintiff has not advanced any argument opposing Defendant's assertion that the arbitration provision is valid and enforceable. Accordingly, the Court finds the arbitration provision is valid.

2

2. *Scope of the Arbitration Provision*

"When determining whether the arbitration clause encompasses the claims at issue, 'all doubts are to be resolved in favor of arbitrability.' " *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 721 (9th Cir. 1999).

Plaintiff originally alleged: (1) Breach of Contract, (2) Violation of Uniform Trade Secrets Act, (3) Unfair Competition, and (4) Violation of Computer Fraud and Abuse Act. This Court dismissed the fourth cause of action, Violation of Computer Fraud and Abuse Act, on May 6, 2015.

The Court finds that Plaintiff's remaining three claims are within the scope of the arbitration provision. The first cause of action for breach of contract alleges that Defendant violated the terms of the Employment Agreement, which falls squarely within the category of disputes "arising from, related to, or having any relationship or connection whatsoever with ... employment by ... Company." The second and third causes of action allege Violation of Uniform Trade Secrets Act and Unfair Competition premised on conduct that occurred during Defendant's tenure as an employee. These two causes of action also come within the purview of the arbitration provision, as they relate to "employment with, employment by, or other association with the Company."

Accordingly, the Court finds that Plaintiff's three remaining claims fall within the scope of the arbitration provision.

### B. Law Governing Waiver Analysis

Defendant contends that, according to the FAA, Plaintiff has waived its right to arbitrate by engaging in a course of litigation spanning seven months without once raising its right to arbitration. Plaintiff retorts that it has not waived its right to arbitrate, and, contrary to Defendant's assertions, California law provides the appropriate legal framework to determine the issue of waiver.

Before proceeding to analyze Defendant's waiver argument, the Court must resolve a dispute between the parties about whether federal law or California law governs the issue of waiver. The FAA and California law utilize different tests to determine whether a party has waived its right to arbitration

**\*3** Under the FAA, a party asserting the defense of waiver must show: (1) knowledge of an existing right to compel arbitration, (2) acts inconsistent with that existing right, and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts. *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1074 (9th Cir. 2013) (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)).

Under California law, courts consider the following six factors:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Saint Agnes Med. Ctr. v. PacifiCare of Cal.*, 82 P.3d 727, 733 (Cal. 2003) (citations and internal quotation marks omitted).

In determining which legal framework to apply, "the strong default presumption is that the FAA, not state law, supplies the rules for arbitration." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269-70 (9th Cir. 2002). "[W]aiver of the right to compel arbitration is a rule for arbitration, such that the FAA controls." *Id.* at 1270. Parties may, however, "agree to state law rules for arbitration even if such rules are inconsistent with those set forth in the Federal Arbitration Act" as long as the parties "clearly evidence their intent" to displace the FAA rules with state law rules for arbitration. *Id.* at 1269.

"[A] general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration." *Id.* at 1270. For example, an arbitration clause providing that controversies are to be resolved "in accordance with the laws of the State of California and the rules of the American Arbitration Association," does not evince clear intent to incorporate California arbitration rules. *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1311-12 (9th Cir. 2004). In contrast, a provision that requires arbitration to be "conducted and subject to enforcement pursuant to the provisions of California Code of Civil Procedure 1280 through 1295" clearly exhibits an intent that the state law rules for arbitration shall govern. *Johnson v. Gruma Corp.*, 614 F.3d 1062, 1067 (9th Cir. 2010).

In the present case, the Employment Agreement provides, "[T]his Agreement shall be controlled by the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act." (Mot. To Compel Arbitration, Natividad Decl., Ex. A). The arbitration provision here does not merely contain a general choice-of-law clause; instead, it closely resembles the arbitration provision in *Johnson* insofar as both provisions contain language specifically referring to the California Arbitration Act ("CAA"). Granted, the arbitration provision in *Johnson* made reference to the specific code section where the CAA is located whereas the provision here refers generally to the CAA. Such a difference in specificity, however, does not dictate a different outcome lest the Court engage in pedantic distinctions. Overall, the language in the Employment Agreement expressly states that the contract shall be governed by "the procedures of the California Arbitration Act," which clearly evidences the parties' intent to incorporate state law rules for arbitration.

**\*4** The Court notes that the FAA standard and the California standard governing waiver bear substantial similarities. The touchstone of waiver under both legal frameworks is whether the party seeking to compel arbitration: (1) took acts inconsistent with its right to arbitrate (2) such that the opposing party has been prejudiced by the delay. *Zamora v. Lehman*, 111 Cal. Rptr. 3d 335, 343-45 (Ct. App. 2010) (explaining the substantial similarity between the California and federal standards governing the issue of waiver). These two primary considerations appear in both the FAA standard and the California standard. For instance, the second factor under the FAA standard—whether a party has taken acts inconsistent with the right to arbitration—is identical to the first factor under the California standard. Likewise, the third factor under the FAA standard—whether the opposing party has experienced prejudice—is the same as the sixth factor under California law. In fact, federal courts have freely intermingled both the FAA and California tests in ruling on issues of waiver. *Richards*, 744 F.3d at 1075; *Ford v. Yasuda*, No. 5:13-CV-01961-PSG-DTB, 2015 WL 3650216, \*4 (C.D. Cal. Apr. 29, 2015).

Thus, the core waiver inquiry under both the FAA and California law is whether the petitioning party has taken inconsistent acts resulting in prejudice to the opposing party. The remaining factors under California law merely provide guidance in analyzing these two primary considerations. Of course, to the extent that any peripheral differences exist between the state and federal bodies of law, the Court's analysis is governed by California law as clearly evidenced by the arbitration clause.

### C. Waiver Analysis

"Arbitration clauses in contracts 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting 9 U.S.C. § 2). "Under the FAA, a party may challenge the validity or applicability of the arbitration provision by raising the same defenses 'available to a party seeking to avoid the enforcement of any contract.' " *Id.* at 1120 (quoting *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th

4

Cir. 2005)). One such defense to the enforcement of a contract is waiver. *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009) ("The right to arbitration, like any other contract right, can be waived.").

"Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). "Because waiver of the right to arbitration is disfavored, 'any party arguing waiver of arbitration bears a heavy burden of proof.' " *Id.* (quoting *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir. 1982)).

As previously recited, California law considers six factors in determining whether a party has waived her right to arbitration, but the thrust of these factors is whether the party seeking to compel arbitration has taken acts inconsistent with its right to arbitration resulting in prejudice. In fact, other courts have acknowledged the six-factor California test but organized their analysis around the two primary considerations: "inconsistent acts" and "prejudice." *Lewis v. Fletcher Jones Motor Cars, Inc.*, 140 Cal. Rptr. 3d 206 (Ct. App. 2012); *Burton v. Cruise*, 118 Cal. Rptr. 3d 613 (Ct. App. 2010). This Court proceeds in a similar fashion.

1. *Inconsistent Acts*

The current litigation lasted seven months before Plaintiff filed its motion to compel arbitration. Over the course of this period, Plaintiff initiated the instant action in federal court, opposed Defendant's motion for judgment on the pleadings, filed a first amended complaint, and participated in both a Rule 26(f) conference and a scheduling conference. Defendant contends that Plaintiff's acts spanning the seven-month period are inconsistent with its right to arbitrate. The Court disagrees.

**\*5** "Although participation in litigation of an arbitrable claim does not itself waive a party's right later to seek arbitration, at some point, litigation of the issues in dispute justifies a finding of waiver." *Hoover v. Am. Income Life Ins. Co.*, 142 Cal. Rptr. 3d 312, 320 (Ct. App. 2012). "There is no fixed stage in a lawsuit beyond which further litigation waives the right to arbitrate." *Id.* at 321. The entire purpose of the California six-factor test is to delineate the point at which mere participation in litigation transforms into waiver of the right to arbitrate. *Saint Agnes*, 82 P.3d at 733.

In determining whether Defendant has taken inconsistent acts to justify a finding of waiver, this Court looks to the four remaining *Saint Agnes* factors for guidance: (2) whether the litigation machinery has been substantially invoked; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps had taken place.

The Court finds that Plaintiff has not substantially invoked litigation machinery. Courts generally find a waiver has occurred when a party seeks arbitration after setting the gears in motion and driving the litigation process throughout. See *Adolph v. Coastal Auto Sales, Inc.*, 110 Cal. Rptr. 3d 104, 111 (waiver found where defendant filed two demurrers and moved for arbitration immediately after losing the second demurrer); *Lewis*, 140 Cal. Rptr. 3d at 217-20 (waiver found where defendant sought arbitration after filing two demurrers and two motions to strike); *Oregel v. PacPizza, LLC*, 187 Cal. Rptr. 3d 436, 449 (Ct. App. 2015) (waiver found where the party responded to pleadings, participated in management conferences, and engaged in extensive discovery including multiple depositions and requests for production). Here, Plaintiff did not actively drive the action forward but merely assumed a reactive position throughout the course of the litigation. As contrasted with other instances where the party seeking arbitration filed several motions to litigate the merits of the case, Plaintiff here merely opposed Defendant's motions and amended its pleadings accordingly.

5

The next factor to consider is whether the party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay. Defendant makes much of the seven-month delay, arguing that such a length of time is unreasonable and justifies a finding of waiver. However, "[t]he mere existence of some delay in asserting arbitration, of itself and without resulting prejudice, will be insufficient to support a finding of waiver." *Law Offices of Dixon R. Howell*, 29 Cal. Rptr. 3d at 516. "Ordinarily, a delay is found unreasonable only when it is combined with the attempt by the party asserting a right to arbitrate to obtain an advantageous litigation position during the delay." *Gloster v. Sonic Automotive, Inc.*, 226 Cal. Rptr. 3d 648, 656 (Ct. App. 2014). In the present case, Plaintiff did not stall until the eve of trial or attempt to gain an advantage by delaying the decision to arbitrate. In fact, the time spent in litigation actually harmed Plaintiff as this Court has dismissed one of its claims.

The fourth factor does not apply to the present case because the party seeking arbitration is not the defendant.

Finally, the Court finds that no important intervening steps had taken place. This factor focuses on whether the party seeking to compel arbitration has utilized extensive discovery or dispositive motions in litigation to gain some strategic advantage. *See Guess?, Inc. v. Superior Court*, 94 Cal. Rptr. 2d 201, 204 (Ct. App. 2000) (waiver found where party sought arbitration after fully participating in the discovery process and took "full advantage of the opportunity to test the validity of [opposing party's] claims"). *Roberts v. El Cajon Motors, Inc.*, 133 Cal. Rptr. 3d 350, 360-61 (Ct. App. 2011) (waiver found where party engaged in substantial written discovery and attempted to gain an advantage by settling with putative class members); *Bower v. Inter-Con Sec. Sys. Inc.*, 181 Cal. Rptr. 3d 729, 736 (Ct. App. 2014) (propounding class-wide discovery of matters beyond the scope of arbitration). A court is less likely to find waiver where no substantive discovery requests have been served by either side. *Roman v. Superior Court*, 92 Cal. Rptr. 3d 153, 167-68 (Ct. App. 2009). Here, Defendant does not contend that the parties engaged in extensive discovery proceedings, he merely argues that he prepared initial disclosures. Thus, there is no indication that Plaintiff attempted to gain a strategic advantage through discovery or dispositive motions.

**\*6** Overall, the Court finds that Plaintiff has not taken sufficient inconsistent acts to justify a finding of waiver.

2. *Prejudice*

"Because merely participating in litigation, by itself, does not result in a waiver, courts will not find prejudice where the party opposing arbitration *shows only that it incurred court costs and legal expenses.*" *Saint Agnes*, 82 P.3d at 736-37. (emphasis added). "Prejudice, however—and a resultant finding of arbitration waiver—may be found where the party seeking arbitration has used the litigation to procure the opposing party's defenses and strategies ... or information not obtainable through arbitration." *Law Offices of Dixon R. Howell v. Valley*, 29 Cal. Rptr. 3d 499, 515 (Ct. App. 2005). "Prejudice typically is found only where the petitioning party's conduct has substantially undermined ... or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." *Id.*

A recent California Court of Appeal decision has identified three recurring categories of conduct that demonstrate prejudice: where a party unreasonably delays, where a party exploits trial court discovery procedures to gain an advantage, and where a party's delay results in lost evidence. *Franco v. Arakelian Enters., Inc.*, 184 Cal. Rptr. 3d 501, 510 (Ct. App. 2015). While this is not an exhaustive list, it does represent a reliable summation of the most common situations where prejudice is found.

In the present case, Defendant does not contend that Plaintiff exploited the trial court discovery procedures to gain an advantage—in fact, the parties had not engaged in much discovery at the time Plaintiff moved to compel arbitration. Moreover, Defendant does not argue that any evidence would be lost as a result of Plaintiff's delay in seeking arbitration. Defendant does claim that he has made important litigation strategy decisions based on the forum; he maintains that any forum change now would result in prejudice. The Court

finds this argument unavailing for two reasons. First, Defendant does not articulate specifically how he will be prejudiced as a result of the litigation strategy he chose. Second, the Court has already dismissed one of Plaintiff's claims, further undermining any prejudice to Defendant.

Defendant's final contention centers on all the effort and funds expended over the seven-month litigation period. As the California Supreme Court has held, however, "[C]ourts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses." *Saint Agnes,* 82 P.3d at 736-37. Overall, the Court finds that Defendant has not suffered prejudice as a result of Plaintiff's delay in seeking arbitration.

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Compel Arbitration.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2015 WL 12656915

---

**End of Document**  © 2018 Thomson Reuters. No claim to original U.S. Government Works.